**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **L.D. HOLLIDAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-cv-0237-MJR** |
| | ) | |
| **WSIE 88.7 FM RADIO STATION,** | ) | |
| **SOUTHERN ILLINOIS UNIVERSITY** | ) | |
| **AT EDWARDSVILLE,** *Board of Trustees,* | ) | |
| **BOARD OF TRUSTEES OF** | ) | |
| **SOUTHERN ILLINOIS UNIVERSITY,** | ) | |
| **THOMAS DEHNER, FRANKLIN L.** | ) | |
| **AKERS, ANGELO GENE MONACO,** | ) | |
| **KENT NEELY, SHARON K. HAHS,** | ) | |
| *and* **DAVID J. WERNER** *in their* | ) | |
| *personal and official capacities.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### A. Factual and Procedural History

From January 1994 until her termination in March 2003, *pro se* plaintiff L.D. Holliday worked as a disk jockey for WSIE-FM, a radio station owned and operated by the Board of Trustees of Southern Illinois University governing Southern Illinois University Edwardsville ("SIUE Board"). In April 2004, Holliday filed suit in this Court, naming the SIUE Board and WSIE-FM radio station as her "employer"/defendant. The sole legal claim alleged by Holliday in her complaint was premised upon Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e,** *et seq.* **("Title VII").**

On August 2, 2004, prior to service of the complaint, Holliday filed an amended

1

complaint, alleging several additional claims for relief.  Holliday's amended complaint contains eight counts.  Counts I – V are brought against Holliday's "employer," whom she pleads as collectively consisting of WSIE-FM, SIUE, and the Board of Trustees of SIU ("SIU Board") (Doc. 5, ¶¶ 5-9).  Although Holliday chose to name each of these three entities as separate defendants, WSIE-FM is "wholly owned and operated by the [SIUE Board]," which is simply that contingent of the SIU Board that manages specifically the affairs of SIUE (Doc. 5, ¶¶ 5, 8).  Accordingly, this Court construes Counts I – V as directed towards the party that requires denomination for Holliday's claims, the SIUE Board. ***See generally*** 110 ILCS 520/7 (**Board of trustees has the power to sue and be sued**). ***Accord Hoffman v. Yack,*** **57 Ill.App.3d 744, 747 (Ill. App. Ct. 1978).**

Count I alleges that the SIUE Board discriminated against Holliday based on her gender and seeks redress pursuant to Title VII.  Count II alleges that the Board discriminated against Holliday based on her race (African-American) and seeks relief under Title VII.  Count III asserts that the SIUE Board's discrimination violated the Americans With Disabilities Act, **42 U.S.C. § 12101,** *et seq.* **("ADA")**. Count IV alleges that the SIUE Board's actions entitle Holliday to redress pursuant to the Equal Pay Act, **29 U.S.C. § 206(d).**  Finally, Count V alleges that the Board unlawfully retaliated against Holliday in contravention of Title VII, the ADA, and the Equal Pay Act ("EPA").

In addition to those claims brought against the SIUE Board, Holliday's amended complaint contains three separate counts (Counts VI – VIII) premised upon **42 U.S.C. § 1983.** Holliday asserts these counts against the six "managing agents for [the SIUE Board]" – David Werner, Sharon Hahs, Kent Neely, Angelo Monaco, Franklin Akers, and Tom Dehner – in both their official and individual capacities.  Count VI alleges that the six individuals engaged in conduct

2

motivated by Holliday's race, in violation of **42 U.S.C. § 1981**.  Count VII asserts that Holliday is entitled to relief, because the conduct of the six individuals was motivated by her gender and "constituted a violation of the Equal Protection Clause of the Fourteenth Amendment ..." (Doc. 5, ¶ 69).  Count VIII is nearly identical to Count VII, asserting a violation of Holliday's equal protection rights but asserting more specifically a violation of her "right to be free from gender discrimination" (Doc. 5, ¶ 78).

Now before this Court is the "Defendants' Renewed Motion to Dismiss" (Doc. 52) filed April 1, 2005 by the SIUE Board and each of the six individual "managing agents" (collectively "Defendants").[1]

**B.** <u>**Standard of Review**</u>

Defendants' various arguments for dismissal are premised on **FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1)** and **12(b)(6)**.

<u>*Dismissal Pursuant to Rule 12(b)(1)*</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be conferred upon a federal court.  ***See In re Chicago, Rock Island & Pac. R. R. Co.*, 794 F.2d**

---

[1]        Holliday has not filed any document that responds to the substantive issues raised in Defendants' motion to dismiss (Doc. 52).  The Clerk of the Court construed Holliday's "Pro Se Plaintiff's Motion in Opposition to Defendants' Renewed Motion to Dismiss" (Doc. 56-1) as Holliday's "response" to Defendants' motion to dismiss.  That document simply requests that the Court deny Defendants' motion "for the reasons stated" in Holliday's "Motion in Opposition to Defendants' Renewed Motion for Sanctions" (Doc. 57) filed April 11, 2005 (Doc. 56, p.1).  Document 57, however, does not address any issue raised in Defendants' motion to dismiss and does little more than provide reasons for Holliday's tardiness in responding to other various filings submitted by Defendants.

1182, 1188 (7**th** Cir. 1986).  In reviewing a 12(b)(1) motion to dismiss, a district court may look

beyond the complaint and view any extraneous evidence submitted by the parties to determine

whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.,*

**78 F.3d 1208, 1210 (7th Cir. 1996).**  When a plaintiff files suit in federal court, that plaintiff bears

the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. United*

*States Dept. of Labor,* **826 F.2d 573, 576 (7th Cir. 1987).**  When a party moves for dismissal

pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof

of jurisdictional facts. *See Thomson v. Gaskill,* **315 U.S. 442, 446 (1942).**

<u>*Dismissal Pursuant to Rule 12(b)(6)*</u>

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to

state a claim upon which relief can be granted.  When considering a motion to dismiss for failure

to state a claim, the Court accepts the plaintiff's allegations as true, and construes all inferences in

favor of the plaintiff. *Hishon v. King & Spalding,* **467 U.S. 69, 73 (1984);** *Thompson v. Ill. Dep't*

*of Prof. Regulation,* **300 F.3d 750, 753 (7th Cir. 2002).**  Dismissal for failure to state a claim is

warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle to him to relief." *Mattice v. Memorial Hosp. Of South Bend, Inc.,*

**249 F.3d 682, 684 (7th Cir. 2001),** *citing Conley v. Gibson,* **355 U.S. 41, 45-46 (1957).**  *Accord*

*Hishon,* **467 U.S. 69, 73 (Rule 12(b)(6) dismissal is appropriate only if "it is clear that no relief**

**could be granted under any set of facts that could be proved consistent with the allegations.").**

Under the liberal notice pleading requirements of the federal rules, all that is required

to state a claim "is a short statement, in plain ... English, of the legal claim." *Kirksey v. R.J.*

*Reynolds Tobacco Co.,* **168 F.3d 1039, 1041 (7th Cir. 1999).**  Thus, Rule 12(b)(6) dismissal should

be denied, "if any facts that might be established within those allegations would permit a judgment for the plaintiff." *Duda v. Board of Education of Franklin Park Public School District No. 84,* **133 F.3d 1054, 1057 (7th Cir. 1998).**

## C. Analysis

In their motion to dismiss, Defendants assert seven arguments for dismissal.  The Court considers each in turn.

### *Holliday's ADA Claims*

Defendants first argue that Holliday's ADA claims in Counts III and V are barred by the Eleventh Amendment to the United States Constitution.  Consequently, Defendants assert, this Court lacks jurisdiction to adjudicate these claims and should dismiss them pursuant to Rule 12(b)(1).

The Eleventh Amendment acts as a jurisdictional bar to suits against a state in federal court, absent that state's consent to the suit. *Edelman v. Jordan,* **415 U.S. 651, 678 (1974).**  The Amendment reads, in part: the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the States by citizens of another State..." **U.S. CONST. amend. XI.**  Although the text of the Amendment refers only to suits brought against "States," the Supreme Court has long held that this reference encompasses not only actions in which a State is actually named as a defendant, but also actions against state agents and state instrumentalities. *Regents of the Univ. Of California v. Doe,* **519 U.S. 425, 429 (1997),** *citing Smith v. Reeves,* **178 U.S. 436, 438-439 (1900);** *Ford Motor Co. v. Department of Treasury of Ind.,* **323 U.S. 459 (1945).**  SIU and the SIUE Board are recognized as state instrumentalities under Illinois law. *See Yack,* **57 Ill.App.3d at 747 ("[a] state university and its Board of Trustees are**

arms of the State and are not independent or autonomous of the State). *See also Cannon v. University of Health Sciences,* 710 F.2d 351, 356 (7th Cir. 1983); *Elliot v. University of Illinois,* 365 Ill. 338 (Ill. 1936).   Accordingly, subject to the exceptions mentioned below, the Eleventh Amendment shields the SIUE Board from Holliday's ADA-based claims.

There are two well-recognized exceptions to a state's Eleventh Amendment immunity: (1) Congress may abrogate a State's immunity under § 5 of the Fourteenth Amendment, and (2) a State may waive its immunity and consent to certain suits brought by private citizens. *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 363 (2001); *Kimel v. Florida Board of Regents,* 528 U.S. 62, 73 (2000).   To abrogate the Eleventh Amendment by Congressional action, Congress must unequivocally intend to do so and "act pursuant to a valid grant of constitutional authority." *Kimel,* 582 U.S. at 73.   The Supreme Court has held that the ADA does *not* meet the requirements necessary to authorize Congress to abrogate the states' Eleventh Amendment immunity. *Garrett,* 531 U.S. at 374.   Accordingly, federal courts do not have jurisdiction to hear ADA claims, unless the state being sued has waived its immunity to such claims. *Id. See also Velasco v. Ill. Dept. Of Human Services,* 246 F.3d 1010, 1016 (7th Cir. 2001).

Because Holliday is suing the State of Illinois, this Court must determine whether *Illinois* has waived its Eleventh Amendment immunity with respect to ADA claims.   "A state may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving immunity to suit in the context of the federal program." *Nelson v. Illinois,* 36 F.3d 684, 690 (7th Cir. 1994).   Under a recently enacted amendment to the Illinois State Lawsuit Immunity Act, Illinois has expressly waived its immunity from suit in federal court by state employees for violations of the ADA.   *See 745 ILCS 5/1.5(d).*   This amendment, however, became

effective on January 1, 2004 and is not retroactive.[2]

In the present case, Holliday alleges that the actions giving rise to her complaint occurred over the course of several years, between January 1994 and March 2003 (*see* Doc. 5, ¶¶ 21, 22, 30). The temporal end-point for Holliday's allegations in her amended complaint – her termination from employment "on or about March 2003" – precedes by several months Illinois' waiver of Eleventh Amendment immunity with respect to ADA claims (Doc. 5, ¶ 33). Consequently, SIUE, as an agency of the state of Illinois, is immune from those of Holliday's claims premised upon the ADA. This Court is without jurisdiction to adjudicate these claims, and therefore must dismiss them pursuant to Rule 12(b)(1). Accordingly, this Court **GRANTS** Defendants' motion to dismiss Count III in its entirety and Count V to the extent Holliday seeks relief pursuant to the ADA.

### Temporal Limitation on Holliday's Title VII Claims

Defendants next argue that this Court must dismiss Holliday's Title VII and ADA claims in Counts I, II, III, and V that relate to any discrete acts of discrimination and/or retaliation that occurred prior to March 11, 2003. Dismissal is necessary, Defendants assert, because Holliday failed to challenge these actions in a timely-filed charge of discrimination. Because this Court has already determined that Holliday's ADA claims are jurisdictionally barred, the Court need only

---

[2] Illinois has adopted the retroactivity test articulated by the Supreme Court in *Landgraf v. USI Film Prods.,* **511 U.S. 244, 280 (1994).** *See Foster Wheeler Energy Corp. v. LSP Equip., LLC,* **346 Ill.App.3d. 753 (Ill. App. Ct. 2004)**(applying retroactive analysis of *Landgraf*). The first step in the *Landgraf* analysis is to determine whether the legislature has clearly indicated the temporal reach of an amended statute. *Id.* Because the Illinois legislature did not clearly indicate its position on retroactive application in **745 ILCS 5/1.5,** the default provisions of the Statute on Statutes, **5 ILCS 70/4,** apply. *Caveney v. Bower,* **207 Ill.2d 82 (Ill. 2003).** Section 4 of the Statute on Statutes prohibits retroactive application of substantive changes to statutes. *See* **5 ILCS 70/4;** *Caveny,* **278 Ill.2d at 92.**

consider the timeliness of Holliday's *Title VII* claims.

The enforcement provisions of Title VII require the filing of an administrative charge as a prerequisite to the maintenance of a lawsuit. **42 U.S.C. §§ 2000e-5(e)(1)** and **12117(a)**; ***National Railroad Passenger Corporation v. Morgan,*** **536 U.S. 101, 109 (2002)**; ***EEOC v. Commercial Office Products Co.,*** **486 U.S. 107, 109 (1988).**  In Illinois, charges of discrimination based upon Title VII must be filed within three hundred days "after the alleged unlawful employment practice occurred." ***National Railroad,*** **536 U.S. at 110;** ***Koelsch v. Beltone Electronics Corp.,*** **46 F.3d 705, 707 (7th Cir. 1995).**  If a party fails to file an administrative charge within this time period, that party is barred from filing a complaint alleging violations of the federal anti-discrimination statutes.  ***Hentosh v. Herman M. Finch University of Health Sciences,*** **167 F.3d 1170, 1173-74 (7th Cir. 1999);** ***Vitug v. Multistate Tax Commission,*** **88 F.3d 506, 511 (7th Cir. 1996);** ***Perkins v. Silverstein,*** **939 F.2d 463, 469-70 (7th Cir. 1991).**

The corollary to these rules holds that "only those incidents [of discrimination or retaliation] that took place within the timely filing period are actionable." ***National Railroad,*** **536 U.S. at 114.**  In the case at bar, Holliday filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2004 (Exhibit B to Doc. 5).  Measuring 300 days from January 5, 2004, Holliday's "timely filing period" extends back to March 11, 2003. Consequently, Holliday's Title VII claims may be based only upon those discrete incidents of discrimination that took place on or after March 11, 2003.  Holliday's claims that rely on any discrete acts of adverse employment that occurred before this date are time-barred, leaving this Court without jurisdiction to hear these claims.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Holliday's Title VII claims based on incidents that occurred prior to March 11,

2003.

### *Holliday's Title VII, ADA, and EPA Claims Against the Individual Defendants*

Defendants next argue that this Court should dismiss Holliday's Title VII, ADA, and EPA claims to the extent they are asserted against the six individual defendants. Although, for the most part, it seems that Holliday only intends to pursue these claims against the SIUE Board, Holliday nonetheless has incorporated Paragraph 16 of her amended complaint into Counts I – V. *See, e.g.,* Doc. 5, ¶¶ 35, 40, 45, 51 and 56. Paragraph 16 names the six individual defendants "in their *personal* and official capacities." (Doc. 5, ¶ 16)(emphasis added). Consequently, this Court must determine whether Title VII, the ADA, and the EPA allow individual liability.

Defendants are correct in pointing out that it is "well established" that Title VII and ADA claims may only be asserted against an employer, and supervisors may not be named as separate defendants in claims based upon these statutes. ***Williams v. Banning, 72 F.3d 552 (7th Cir. 1995)(Title VII); EEOC v. AIC Security Investigations, Inc.,  55 F.3d 1276 (7th Cir. 1995).*** Accordingly, the Court **DISMISSES** Holliday's Title VII and ADA claims to the extent they are asserted against the individual defendants.

As to Holliday's EPA-based claims, however, this Court is not convinced that such claims may only be asserted against an employer and not a supervisor.  In arguing for that proposition, Defendants rely upon ***Harris v. City of Harvey,* 992 F.Supp. 1012 (N.D. Ill**. **1998).** This Court finds the reasoning employed in the *Harris* decision unpersuasive.  In *Harris,* the Court drew on other district court decisions to posit that the EPA "is in essence ... a blood sibling of ... and conceptually interfaces with [Title VII and the ADA]" and, therefore, like Title VII and the ADA, does not allow for suits against defendants in their individual capacities. ***Harris,* 992 F.Supp. at**

1013-14.

However alluring it might be to trace the lineage of certain pieces of legislation, this Court cannot ignore fundamental differences in statutory language – particularly the EPA's definition of the term "employer." The word "employer" – which was key to the Seventh Circuit's determinations in *Williams* and *EEOC* – is defined differently in Title VII and the ADA than it is in the EPA.

The EPA is part of the Fair Labor Standards Act ("FLSA"), and necessarily shares the definition of employer contained within FLSA. **29 U.S.C. § 206(d);** *Soto v. Adams Elevator Equip. Co.,* **941 F.2d 543, 551 n. 12 (7th Cir. 1991)(EPA is contained within FLSA as amended).** FLSA defines employer to include "any person" acting "directly or indirectly in the interest of an employer." **29 U.S.C. §§ 203(d), 2611(4)(A)(ii)(1).** While the Seventh Circuit found ambiguous the definition of "employer" used in Title VII and the ADA – thus requiring that Court to turn to deeper levels of statutory interpretation – that Court did not have similar difficulties determining the strictures of the term as employed in the EPA. *See Banning,* **72 F.3d 552;** *EEOC,* **55 F.3d 1276.**

The *EPA* definition, the Seventh Circuit has stated clearly, is broad enough "to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Riordan v. Kempiners,* **831 F.2d 690, 694 (7th Cir. 1987); 29 U.S.C. § 203(d).** Contrary to Defendants' suggestion, then, under Seventh Circuit law a supervising employee *may* be liable for an EPA violation (so long as certain conditions are met).

Nonetheless, this Court finds that dismissal of Holliday's individual-capacity EPA claims *is* appropriate – although for different reasons than those the Defendants posit. Holliday's

complaint asserts (somewhat ambiguously) an EPA claim against *both* her employer (the SIUE Board) and her supervisors (the six individual defendants).  This Court notes, however, that in **Riordan**, the Seventh Circuit used the phrase "*rather* than the employer..." in referring to the filing of an EPA claim against a supervisor.  **Riordan, 831 F.2d at 694 (emphasis added).**  This phrase implies that, although a plaintiff might permissibly assert an EPA claim against another employee, a plaintiff should not assert an EPA claim against *both* an employer *and* another employee.  Accordingly, this Court must dismiss either Holliday's EPA claims directed at the individual supervisors, or those directed at the SIUE Board.

Unfortunately, in failing to adequately respond to Defendants' motion to dismiss on this issue, Holliday's exact intentions regarding these assertions remain enveloped in ambiguity.  In light of Holliday's *pro se* status, this Court suspects that this ambiguity is more likely the result of her lack of legal expertise than of an affirmative effort on her part to contravene Seventh Circuit precedent.

Looking at the balance of Holliday's complaint, it seems that, if pressed, Holliday meant to assert her EPA claim against the SIUE Board rather than the individual defendants.  For instance, the only general references that Holliday makes to her "compensation" are expressly directed at her "employer" (Doc. 5, ¶¶ 23, 24, 25).  Moreover, of the six individual defendants, Holliday only alleges that *one* of them – Angelo Gene Monaco – was responsible for her "compensation" (Doc. 5, ¶ 13).  Otherwise, Holliday's amended complaint is devoid of allegations asserting that the other five supervisors were partially responsible for any pay disparity.  Indeed, the Court doubts that the claims against the other individual supervisors  would survive a motion to dismiss.  For these reasons, the Court hereby **DISMISSES** Holliday's individual-capacity EPA

11

claims.

> *Holliday's § 1983 Claims in Count VI*

Defendants next argue that Holliday has failed to allege sufficient facts to allege the essential elements of her § 1983 claim in Count VI.  Consequently, Defendants argue, this Court should dismiss Count VI.

In Count VI, Holliday alleges that the conduct of the individual defendants constituted a violation of **42 U.S.C. § 1981.**  Section 1981 authorizes suits arising out of racial discrimination in the making and enforcing of contracts. ***See* 42 U.S.C. § 1981.**  In order to state a claim under § 1981, a plaintiff must allege the following elements: (1) the plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. ***Id. See also Daniels v. Pipefitters Ass'n,* 945 F.2d 906, 913 (7th Cir. 1991); *Gehring v. Case Corp.,* 43 F.3d 340, 344 (7th Cir. 1994); *Achor v. Riverside Golf Club,* 117 F.3d 339, 340 (7th Cir. 1997).**  Naturally, when alleging contractual interference, the plaintiff also must allege the existence of a contract. ***Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1034 (7th Cir. 1998).**

As mentioned, under the liberal notice pleading requirements of the federal rules, all that is required to state a claim "is a short statement, in plain ... English, of the legal claim." ***Kirksey,* 168 F.3d at 1041.**  Thus, Rule 12(b)(6) dismissal should be denied, "if any facts that might be established within those allegations would permit a judgment for the plaintiff." ***Duda,* 133 F.3d at 1057.**

As liberal as the applicable standard of review may be, it becomes even more relaxed

when applied to a *pro se* complaint such as Holliday's.  Such complaints are "not held to the [more] stringent standards expected of pleadings drafted by lawyers." ***McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir. 2000).**  Furthermore, Holliday's complaint alleges *civil rights* violations, and under the laws of the Seventh Circuit, *pro se* civil rights complaints may only be dismissed "if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief." ***Shango v. Jurich,* 681 F.2d 1091, 1103 (7th Cir. 1982).**

Viewing Holliday's amended complaint through this forgiving looking-glass, the Court finds that Count VI survives dismissal.  In asserting Count VI, Holliday expressly incorporates "all previous paragraphs of [her] complaint" (Doc. 5, ¶ 62), including paragraph 22, which alleges the existence of "contracts of employment, pay and promotion" (Doc. 5, ¶ 22).  This same paragraph alleges that Defendants "engaged in conduct ...intended to interfere with [Holliday's] ability to enter into a contract... cause [her] contract performance to be more burdensome, cause the terms or conditions of the contract to be altered adversely, [and] cause ... [Holliday] to [be unable] to enforce [the] terms and conditions of the contract" (Doc. 5, ¶ 22).  Holliday also alleges that this conduct was "motivated by [her] race,[3] and was intentional" (Doc. 65).  It is clear to this Court, then, that Holliday has alleged each of the requisite elements for a § 1981 claim.  Accordingly, the Court hereby **DENIES** Defendants' motion to dismiss Holliday's Count VI.

*Direct Involvement of Individual Defendants in Racial and Gender Discrimination*

Defendants next argue that Holliday has failed to allege that individual defendants Werner, Hahs, Neely, Monaco, and Akers were *directly* involved in any alleged discriminatory

---

[3]     As mentioned, Holliday alleges in paragraph 18 of her Amended Complaint that she is African-American.

13

and/or retaliatory actions.  As a result, Defendants argue, this Court must dismiss each as a defendant to Holliday's § 1983 claims as alleged in Counts VI, VII and VIII.

To establish an individual-capacity claim under § 1983 against a supervisory official, "there must be a showing that the official was directly responsible for the improper conduct, and knowingly, willfully, or at least recklessly caused the alleged deprivation by [his or her] action or failure to act." ***McPhaul v. Board of Com'rs of Madison County,*** **226 F.3d 558, 566 (7ᵗʰ Cir. 2000).** Nonetheless, a supervisor's *direct* participation in the deprivation is not required. ***Id.*** "An official satisfies the personal responsibility requirement of § 1983 if [the supervisory official] acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [the supervisor's] direction or *with* [the supervisor's] *knowledge and consent.*" ***Id.*** **(emphasis added),** ***citing Rascon v. Hardiman,*** **803 F.2d 269, 274 (7ᵗʰ Cir. 1986).**

Scrutinizing Holliday's amended complaint in the liberal manner afforded *pro se* civil rights complaints, the Court finds that Holliday's § 1983 claims against the individual defendants survive dismissal.[4]  Holliday alleges in all three counts that each individual's conduct was "intentional, malicious and done with a reckless indifference to [Holliday's] federally protect rights" (Doc. 5, ¶¶ 65, 71, 77). While Holliday does not allege the exact conduct giving rise to her allegations, in each count she expressly incorporates "all previous paragraphs" of her amended

---

[4]        Although Defendants do not contest the fact, this Court notes that Holliday has also sufficiently alleged a key element to any § 1983 claim – that the defendants acted (or failed to act) because of Holliday's being a member of a protected class. ***See McPhaul,*** **226 F.3d at 566,** ***citing Nabozny v. Podlesny,*** **92 F.3d 446, 453 (7ᵗʰ Cir. 1996).**  In Counts VI, VII, and VIII, Holliday expressly names each of the six individual supervisors (Doc. 5, ¶¶ 63, 69, 75) and alleges that each individual's conduct was motivated either by her race (¶ 65) or her gender (¶¶ 71, 77).

14

complaint (Doc. 5 ¶¶ 62, 68, 74).

In those paragraphs, Holliday makes numerous allegations concerning the conduct of the "Defendants" – a group Holliday expressly asserts as comprising each of the six supervisors in their individual capacities (*see* Doc. 5, ¶ 16).  Holliday alleges that the "Defendants were aware of [discriminatory conduct directed towards her] but failed to intervene and take corrective action" (Doc. 5, ¶¶ 27, 28).  Moreover, Holliday asserts several additional allegations indicating that the "Defendants" either acted or failed to act with a "deliberate or reckless disregard of [her] constitutional rights." ***See McPhaul,* 226 F.3d at 566.**  For instance, Holliday alleges that the "Defendants willfully and intentionally acquiesced to allowing [her] to be subjected to unlawful conduct" (¶¶ 26, 28, 29, 30) and even "retaliated against [Holliday] for making reports and complaints [concerning behavior that was, among other things, discriminatory]" (¶ 30).

Moreover, those statements which Defendants concede "allege facts that relate to the conduct" of one of the individual defendants (defendant Dehner) (Doc. 52, p. 8) are also expressly directed at "other supervisors, managing agents and employees" (Doc. 5, ¶¶ 27-29).  Notably, there may be some ambiguity as to whether "other supervisors, managing agents and employees" comprises the five remaining individual defendants. However, construing all inferences in favor of Holliday, this Court interprets these statements as directed not just towards defendant Dehner but also towards the five remaining supervisors.

Combined, the above-mentioned allegations sufficiently assert each of the requisite elements for § 1983 claims against each of the six individual defendants.  Accordingly, the Court **DENIES** Defendants' motion to dismiss Counts VI, VII, and VIII to the extent they are directed at those individual defendants other than Dehner.

15

*Holliday's § 1983 Claims that Relate to Events that Occurred Prior to August 2, 2002*

Defendants next argue that Holliday's § 1983 claims in Counts VI, VII, and VIII are barred by the applicable statute of limitations to the extent that Holliday seeks to recover for any alleged discriminatory acts that occurred prior to August 2, 2002.  Defendants maintain that this Court should dismiss with prejudice any § 1983 claims based on events that occurred prior to August 2, 2002.

To determine the proper statute of limitations for § 1983 actions, federal courts adopt the forum state's statute of limitations for personal injury claims. *Mitchell v. Donchin,* **286 F.3d 447, 450 n.1 (7th Cir. 2002)** *citing Ashafa v. City of Chicago,* **146 F.3d 459, 461 (7th Cir. 1998).** Pursuant to **735 ILCS 5/13-202,** the statute of limitations for a § 1983 claim filed in a federal court located in Illinois is two years. *Ashafa,* **146 F.3d at 462.**

Defendants point out that Holliday named the various individual supervisors as defendants and expressly asserted § 1983 claims for the first time in her amended complaint, which she filed on August 2, 2004.  Measuring back two years from this date,[5] Holliday is barred from bringing any § 1983 claims based on adverse employment practices that necessarily occurred prior to August 2, 2002.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss with prejudice Holliday's § 1983 claims that are based on conduct which occurred prior to August 2, 2002

*Holliday's § 1983 Claims Direct Against Individual Defendants in Official Capacities*

Finally, Defendants argue that to the extent Holliday has brought her § 1983 claims

---

[5]

After conducting the appropriate analysis, this Court has determined that FEDERAL RULE OF CIVIL PROCEDURE **15(c)** does not apply to Holliday's § 1983 claims brought against the individual supervisors.  This is not a situation in which Holliday's amended complaint regarding these claims relates back to the date of her original pleading.  *See* FED. R. CIV. P. **15(c)(2)** and **(3).**

in Counts VI, VII and VIII against each individual in their "official" capacities, such claims are barred by the Eleventh Amendment, and should be dismissed with prejudice.

In their "official" capacities, each of the six individual defendants are "managing agents" and officials of the SIUE Board (Doc. 5, ¶¶ 10-15).  As mentioned above, an "[Illinois] State university and its Board of Trustees are arms of the State and are not independent or autonomous of the State." *Yack,* **57 Ill.App.3d at 747.**  Thus, in their official capacities, each of the six individual defendants is properly considered an agent or official of the *State of Illinois*.  Notably, according to the United States Supreme Court, "a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office ... [and] is no different from a suit against the State itself." ***Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacity are 'persons' under § 1983").**

Accordingly, this Court again must determine whether certain claims – in this instance, § 1983 claims – can be asserted against the State of Illinois.

As this Court has previously noted, the Eleventh Amendment acts as a jurisdictional bar to suits brought against a state in federal court, unless: (1) Congress has abrogated a state's immunity under § 5 of the Fourteenth Amendment, or (2) the State has waived its immunity and consented to certain suits brought by private citizens. *See Garrett,* **531 U.S. at 363;** *Kimel,* **528 U.S. at 73.**  According to the Supreme Court and the Seventh Circuit, § 1983 does not constitute a waiver of a state's Eleventh Amendment immunity.  *See Quern v. Jordan,* **440 U.S. 332, 342-345 (1979);** *Hearne v. Board of Education of City of Chicago,* **185 F.3d 770, 776-77 (7th Cir. 1999).**  Nor has the  State of Illinois waived its Eleventh Amendment immunity for § 1983 suits. *Hearne,* **185 F.3d**

at 776 ("we regard [the fact that the State cannot be sued for damages under § 1983] as so well established that it needs no further discussion...").   Consequently, this Court is without jurisdiction to adjudicate Holliday's § 1983 claims brought against each of the six individual defendants in their official capacities and therefore **DISMISSES** these claims pursuant to Rule 12(b)(1).

**D. Summary**

The Court **GRANTS** in part and **DENIES** in part Defendants' motion (Doc. 52).  The motion is **granted** in that the Court **DISMISSES** Count III in its entirety, **DISMISSES** Count V to the extent Holliday seeks relief pursuant to the ADA,  **DISMISSES** the Title VII claims in Counts I, II, and V that relate to any discrete acts of discrimination and/or retaliation that occurred prior to March 11, 2003,  **DISMISSES** Holliday's individual-capacity Title VII, ADA, and EPA claims, **DISMISSES** Holliday's § 1983 claims to the extent that those claims are based on conduct that necessarily occurred prior to August 2, 2002, and **DISMISSES** Holliday's § 1983 claims asserted against each of the six individual defendants in their official capacities.

The motion is **denied** in the following respects: (1) The Court **DENIES** Defendants' motion to dismiss Holliday's Count VI, and (2) the Court **DENIES** Defendants motion to dismiss Counts VI, VII, and VIII to the extent they are directed at those individual defendants other than Dehner.

The following claims remain in this case: (1) Holliday's Title VII claims in Counts I, II, and V, but only to the extent those claims are brought against the SIUE Board, and only to the extent that those claims relate to discrete acts of discrimination and/or retaliation that occurred *after* March 10, 2003; (2) Holliday's EPA claims in Counts IV and V, but only to the extent those claims

are brought against the SIUE Board; (3) Holliday's claims in Counts VI, VII, and VIII against all *six* defendants, but only against those defendants in their *individual* capacities, and only to the extent those claims are based on conduct that occurred *after* August 1, 2002.

**IT IS SO ORDERED.**

**DATED this 7th day of December, 2005.**

<u>s/Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**

19