**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **L.D. HOLLIDAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 04-cv-0237-MJR** |
| ) | |
| **BOARD OF TRUSTEES OF** ) | |
| **SOUTHERN ILLINOIS UNIVERSITY** ) | |
| **governing SOUTHERN ILLINOIS** ) | |
| **UNIVERSITY EDWARDSVILLE,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### A. Factual History

From January 1994 until her termination in March 2003, *pro se* plaintiff L.D.

Holliday worked as a deejay for WSIE-FM, a radio station owned and operated by the Board of

Trustees of Southern Illinois University governing Southern Illinois University Edwardsville ("SIUE

Board").

Holliday first began working with WSIE in approximately January 1994, as an unpaid

volunteer (*see* Doc. 99, Exhibits 1-5, Transcript of L.D. Holliday ("TR") at 25). Subsequently,

Holliday became a contract vendor before ultimately being hired as an employee, effective April 1,

1997 (TR 27, 31, 35-36, 40-43). As an employee, Holliday received a monthly salary, but did not

receive health insurance or otherwise participate in any retirement benefit program (TR 39).

After Holliday became a full-time employee, she was classified as a term

appointment, meaning that she was employed for a specified period of time. Each term appointment

1

was consistent with the fiscal year for SIUE (July 1 through June 30). After Holliday completed her initial term appointment on June 30, 1997, she was subsequently renewed with every fiscal year, through and including the 2002-2003 fiscal year.

Throughout the period that she was an actual employee of WSIE, Holliday reported to the General Manager of WSIE, Defendant Frank Akers (TR 35, 43-45).  Defendant Thomas Dehner was only responsible for the news department and otherwise did not supervise Holliday's performance as an on-air personality at WSIE (TR 33-34, 47, 51, 53-54, 73).

The events that ultimately resulted in Holliday's termination arose from her broadcast on Valentine's Day, February 14, 2003. Specifically, while on the air, Holliday read a quiz entitled "Are You A Lazy Lover?" which consisted of six (6) multiple choice questions – on topics ranging from personal hygiene, to preferred sexual positions, to the proper way to perform oral sex – together with a suggested commentary for the correct answer to each question (TR 64-65).

While Holliday alleges that Defendant Akers reviewed some of the materials that she had planned for the "special" broadcast on Valentine's Day, she neither showed Mr. Akers the "Are You A Lazy Lover?" quiz, nor did she specifically obtain his approval to read the contents of this quiz on the air (TR 71-72). Nevertheless, Holliday saw nothing inappropriate in reading the "Lazy Lover" quiz on the air because, in her judgment, it was an educational discussion based on what she "quoted and paraphrased" from other "professionals" (TR 75-76). Accordingly, Holliday believed that it was appropriate to discuss oral sex, in general, and specifically, the proper technique, because this discussion dealt "with life, liberty and the pursuit of happiness" (TR 79-81).

Following that broadcast, Holliday had a meeting on February 21, 2003, with Darren Cannon, Associate Director, Human Resources for SIUE, and Defendant Akers, at which time she

was informed that she was being placed on administrative leave, with pay, pending completion of an investigation related to the broadcast (TR 96-103, 107-108). Defendant Dehner was not present for this meeting (TR 103).

Subsequently, SIUE afforded Holliday a pre-disciplinary hearing on March 10, 2003 (TR 109-114).   During her pre-disciplinary hearing, A. G. Monaco, the Director of Human Resources for SIUE, was present, along with Mr. Cannon (TR 115).   During this meeting, Holliday was questioned regarding the Valentine's Day broadcast, and was specifically informed that the Chancellor of SIUE, Defendant David Werner, had heard the broadcast and had complained about the contents (TR 86, 113, 115-116).   The discussion with Holliday included questioning about her broadcast and the discussion of oral sex techniques (TR 119-120).   Following that hearing, Holliday was advised by letter dated March 11, 2003, that her employment was terminated, effective at the close of business on March 14, 2003 (TR 132-133; *see* Doc. 99, Exhibit 10).

Notably, Holliday's termination letter mentioned that the decision to terminate her employment was the result of the February 14, 2003 broadcast "in conjunction with ... numerous violations of University rules of conduct in the past ..." (Doc. 99, Exhibit 10).   That statement was a reference to the fact that prior to the February 14, 2003 broadcast, Holliday had been placed on "final warning" status (TR 178-179; *see* Doc. 99, Exhibit 13).   The events that led to her final warning status occurred on January 9, 2003, and involved a dispute involving Holliday, Karen Johnson, a black female student at SIUE (TR 88), and Defendant Dehner (TR 167-169).

Regarding that incident, Holliday acknowledges that she removed an audio tape from the recorder in the on-air booth, which was being used by Karen Johnson and another student to record the news broadcast (TR 168, 170-171). While Holliday disputed the accusation, Johnson

reported to Mr. Dehner that Holliday had thrown the tape at her after removing it from the tape recorder (TR 171-173). After Johnson reported this incident to Defendant Dehner, both he and Holliday had a "verbal altercation" regarding her behavior directed towards Johnson and the other student (TR 173- 176).   Subsequently, Holliday contacted the SIUE police, who prepared an incident report.  After reviewing the circumstances of the January 23, 2003 incident, Mr. Akers issued Holliday a "final warning" regarding her conduct as an employee on that date (TR 178; *see* Doc. 99, Exhibit 13).

**B.  Procedural History**

In April 2004, Holliday filed suit in this Court, naming the SIUE Board and WSIE-FM radio station as her  "employer"/defendant.  The sole legal claim alleged by Holliday in her original complaint was premised upon Title VII of the Civil Rights Act of 1964, **42 U.S.C. § 2000e, *et seq.* ("Title VII").**

On August 2, 2004, Holliday filed an amended complaint, alleging several additional claims for relief.  Holliday's amended complaint contains eight counts.  Counts I – V are brought against Holliday's "employer," whom she pleads as collectively consisting of WSIE-FM, SIUE, and the Board of Trustees of SIU ("SIU Board") (Doc. 5, ¶¶ 5-9).  Although Holliday chose to name each of these three entities as separate defendants, WSIE-FM is "wholly owned and operated by the [SIUE Board]," which is simply that contingent of the SIU Board that manages specifically the affairs of SIUE (Doc. 5, ¶¶ 5, 8).  Accordingly, this Court construes Counts I – V as directed only towards the SIUE Board. ***See generally* 110 ILCS 520/7 (Board of trustees has the power to sue and be sued). *Accord Hoffman v. Yack,* 57 Ill.App.3d 744, 747 (Ill. App. Ct. 1978).**

Count I alleges that the SIUE Board discriminated against Holliday based on her

gender and seeks redress pursuant to Title VII.  Count II alleges that the Board discriminated against

Holliday based on her race and seeks relief under Title VII.  Count III asserts that the SIUE Board's

discrimination violated the Americans With Disabilities Act, **42 U.S.C. § 12101,** ***et seq.*** **("ADA")**.

Count IV alleges that the SIUE Board's actions entitle Holliday to redress pursuant to the Equal Pay

Act, **29 U.S.C. § 206(d).**  Finally, Count V alleges that the Board unlawfully retaliated against

Holliday in contravention of Title VII, the ADA, and the Equal Pay Act.

        In addition to those claims brought against the SIUE Board, Holliday's amended

complaint contains three separate counts (Counts VI – VIII) premised upon **42 U.S.C. § 1983.**

Holliday asserts these counts against the six "managing agents for [the SIUE Board]" – David

Werner, Sharon Hahs, Kent Neely, Angelo Monaco, Franklin Akers, and Tom Dehner – in both their

official and individual capacities.  Count VI alleges that the six individuals engaged in conduct

motivated by Holliday's race (African-American), in violation of **42 U.S.C. § 1981**.  Count VII

asserts that Holliday is entitled to relief, because the conduct of the six individuals was motivated

by her gender and "constituted a violation of the Equal Protection Clause of the Fourteenth

Amendment ..." (Doc. 5, ¶ 69).  Count VIII is nearly identical to Count VII, asserting a violation of

Holliday's equal protection rights but asserting more specifically a violation of her "right to be free

from gender discrimination" (Doc. 5, ¶ 78).

        On December 7, 2005, this Court granted Defendants' motion to dismiss (Doc. 52)

and dismissed a number of Holliday's claims (*see* Doc. 61).  As set forth therein, the following are

the only remaining claims at issue in this proceeding: (1) Holliday's Title VII Claims against SIUE

in Counts I, II, and V; (2) Holliday's Equal Pay Act Claims against SIUE alleged in Counts IV and

V; and (3) Holliday's claims in Counts VI, VII and VIII against the individual defendants.

Now before the Court is the Defendants' motion for summary judgment (Doc. 99), requesting that this Court enter judgment in favor of Defendants on each of Holliday's remaining claims. Holliday has filed her response, a "motion in opposition to Defendants' motion for summary judgment" (Doc. 113), to which Defendants have filed a reply (Doc. 121). This matter being fully briefed, the Court now rules as follows.

**C. Standard of Review**

Defendants' various arguments for summary judgment are premised upon **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**. Pursuant to that rule, summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c).** The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).**

In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 699 (7th Cir. 2001); *Miranda v. Wisconsin Power & Light Company*, 91 F.3d 1011, 1014 (7th Cir. 1996).** However, the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. ***Anderson,* 477 U.S. at 247; *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002).** Rather, to successfully oppose summary judgment, the non-movant must present definite, competent evidence in rebuttal. ***Vukadinovich v. Board of Sch. Trs. of North Newton Sch. Corp.*, 278 F.3d 693, 698-99 (7th Cir.**

6

**2002)**.

**D.  Analysis**

Defendants present several arguments for summary judgment.  Before analyzing each argument, the Court will first comment on Holliday's "response" to Defendants' motion.

As it does with all motions for summary judgement filed with the Court, this Court has order Holliday to file a response thereto.  Under the FEDERAL RULES OF CIVIL PROCEDURE, Holliday is required to respond in some manner to Defendants' various legal arguments and to present "definite, competent evidence in rebuttal" to show that genuine issues of material fact remain in dispute. *Vukadinovich,* **278 F.3d at 698-99.**  Reviewing Holliday's latest submissions, the Court finds that Holliday has done neither.

Rather, Holliday has again presented this Court with excuses for her continued failure to diligently prosecute her claim, unsupported accusations against Defendants, and claims that she has somehow been denied a fair opportunity to litigate her cause of action.  The Court rejects these contentions.

First, Holliday claims that she "has not been granted a fair opportunity for discovery from Defendants" and has recently filed a "motion to compel" (Doc. 113, p. 2).  That motion to compel (Doc. 117) was filed on May 30, 2007 and was denied by Magistrate Judge Clifford Proud a mere two days later (*see* Doc. 119). In denying Holliday's motion, Judge Proud noted that Defendants had not yet responded, but that the motion was so lacking in merit that "no response [was] really needed" (Doc. 119, p. 1). This Court agrees.

In that motion, Holliday moved for an order compelling Defendants to answer her first and second sets of interrogatories, requests for production, and first and second sets of requests

for admissions.  In ruling on her motion, Judge Proud found "several reasons" to reject her request for interrogatories and requests for admissions (*see* Doc. 119, p. 1).  Specifically, Judge Proud pointed out that the discovery requests were filed too late *in spite of the fact* that the discovery schedule had been extended *numerous* times and the fact that the Court had specifically warned Holliday on January 31, 2007 that she could no longer ignore her discovery obligations (*see* Doc. 86).

Moreover, Judge Proud noted, Holliday's inability to seek further discovery from Defendants was in large part due to the fact that Holliday herself had ignored *two* orders by the Court to serve initial disclosures (*see* Docs. 37, 69).  In other words, Holliday has completely disregarded her own disclosure obligations, has ignored several Court orders to provide discovery, and yet repeatedly demands that Defendants be held in contempt for not producing evidence that would, according to Holliday,"prove material facts are in dispute" (Doc. 113, p. 4).  As Judge Proud succinctly put it in his order denying Holliday's motion to compel: "[t]his is not the way litigation works."

Secondly, Holliday borrows the language of **FEDERAL RULE OF CIVIL PROCEDURE 56(f)** to assert that she has not been able to obtain affidavits containing facts essential to justify her opposition "because Defendants have acted in bad faith" (Doc. 113, p. 2). The Court has carefully reviewed the record of this matter and has found no basis whatsoever to support this contention. **RULE 56(f)** states, in relevant part: "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court *may* refuse the application for judgment or *may* order a continuance ..." **FED. R. CIV. P. 56(f)(emphasis added).**

8

In this matter, for the reasons already stated, there is no appearance that Holliday cannot present essential facts "because Defendants have acted in bad faith ..." Accordingly, it would be entirely inappropriate for this Court to deny the motion for summary judgment or otherwise postpone this matter pursuant to **RULE 56(f).** The Court will not order a continuance and will not afford Holliday any further opportunity to engage in a "fishing expedition" for facts that may or may not exist and may or may not support her claims. The Court will rule on Defendants' motion for summary judgment based on the record now before it.

Finally, Holliday asserts that "[s]ummary judgment should not be granted unless the evidence could not support any reasonable inference of discrimination or retaliation (sic)" (Doc. 113, p. 3). That assertion is an incorrect statement of law. As mentioned, "the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion." ***Anderson,* 477 U.S. at 247.** Rather, to successfully oppose summary judgment, the non-movant must present definite, competent evidence in rebuttal. ***Vukadinovich v. Board of Sch. Trs. of North Newton Sch. Corp.*, 278 F.3d 693, 698-99 (7th Cir. 2002)**. Despite being afforded *ample* opportunity to do so over the course of three years, Holliday has failed completely to present any competent evidence to support her various claims or to rebut Defendants' various arguments for summary judgment. With this in mind, the Court now determines the merit of each of Defendants' arguments for summary judgment.

*Whether Holliday's Title VII Hostile Work Environment Claim is Barred*

Defendants first argue that Holliday cannot pursue a hostile work environment claim against any of Defendants because such a claim was not included in Holliday's Equal Employment Opportunity Commission ("EEOC ") charge. In order to maintain a Title VII hostile work

environment claim based on race or gender, a plaintiff must first file a charge of discrimination with the EEOC. ***Love v. Pullman Co.*, 404 U.S. 522 (1972); 42 U.S.C § 2000e-5(e)(l).** While the prerequisite of an EEOC charge is not jurisdictional in nature, it is a mandatory condition precedent to Holliday's ability to maintain such claim against SIUE. ***Zipes v. Trans World Airlines. Inc*., 455 U. S. 3 85 (1982)**; ***National Railroad Passenger Corp. v. Morgan*, 536 U. S. 101 (2002)** and ***Gibson v. West*, 201 F.3d 990 (7th Cir. 2000)**. Accordingly, Holliday must establish than any hostile work environment claim was either included in her underlying charge of discrimination or is otherwise "like or related" to the claims included in her EEOC charge.

Defendants argue that the only adverse employment action included in Holliday's EEOC charge was her claim of race and gender discrimination against SIUE arising from her March 11, 2003 *termination*. This Court disagrees. Holliday's charge of discrimination with the EEOC filed on January 5, 2004 (Exhibit B to Doc. 5), asserts hostile work environment discrimination.

Normally, in Illinois, charges of discrimination based upon Title VII must be filed within three hundred days "after the alleged unlawful employment practice occurred." ***National Railroad*, 536 U.S. at 110; *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).** If a party fails to file an administrative charge within this time period, that party is barred from filing a complaint alleging violations of the federal anti-discrimination statutes. ***Hentosh v. Herman M. Finch University of Health Sciences*, 167 F.3d 1170, 1173-74 (7th Cir. 1999); *Vitug v. Multistate Tax Commission*, 88 F.3d 506, 511 (7th Cir. 1996); *Perkins v. Silverstein*, 939 F.2d 463, 469-70 (7th Cir. 1991).**

The corollary to these rules holds that "only those incidents [of discrimination or retaliation] that took place within the timely filing period are actionable." ***National Railroad*, 536**

10

**U.S. at 114.**  In the case at bar, Holliday filed a charge of discrimination with the EEOC on January 5, 2004 (Exhibit B to Doc. 5).  Measuring 300 days from January 5, 2004, Holliday's "timely filing period" extends back to March 11, 2003.  Consequently, Holliday's Title VII claims may be based only upon those discrete incidents of discrimination that took place on or before March 11, 2003, the day Holliday was terminated.

Nonetheless, an exception exists when an employee makes a claim of a "hostile work environment," as Holliday presented in her EEOC complaint.  "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period ... [p]rovided that an act contributing to the claim occurs with the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National R.R. Passenger Corp., v. Morgan,* **536 U.S. 101, 117 (2002).**  In this matter, in her EEOC charge, Holliday's purportedly discriminatory discharge constitutes "an act contributing to" her hostile work environment claim.  Accordingly, the Court disagrees with Defendants' contention that Holliday's hostile work environment claim fails because it was not included in her EEOC complaint.

However, the Court *does* agree with Defendants' more general contention that summary judgment is appropriate on Holliday's hostile work environment claims. In the present matter, Holliday has not made out a *prima facie* case for hostile work environment discrimination. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* **at 116 (internal citations omitted).**  "In determining whether an actionable hostile work environment claim exists [trial courts] look to all

11

the circumstances, including the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably intereferes with an employee's work performance." *Id.*

In this matter, as this Court has already mentioned, Holliday has presented no evidence to support the allegations in her complaint other than her own accusations. The Court is cognizant that it must view the facts and draw all reasonable inferences in favor of the nonmoving party when considering a motion for summary judgment. *Anderson*, **477 U.S. at 255 (1986).** Nevertheless, "the nonmoving party is not entitled to rely on conclusory allegations, unsupported by the record." *DeLoach v. Infinity Broadcasting,* **164 F.3d 398, 402 (7th Cir. 1999), citing** *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* **475 U.S. 574 (1986).** Holliday cannot survive summary judgment by citing to her *own* assertions, unless those assertions are supported by independent facts. In this matter, Holliday has failed to produce independent facts sufficient to present a *prima facie* hostile work environment case. Accordingly, summary judgment is appropriate against Holliday and in favor of Defendants on these claims.

*Whether Holliday's Remaining Title VII Claims are Barred by the Statute of Limitations*

Defendants next argue that the only adverse employment action that is covered by a timely filed charge of discrimination is the termination decision itself, and that any allegations of discrimination regarding her pay, work atmosphere, or any other terms and conditions of employment necessarily occurred prior to March 10, 2003. This Court agrees.

As mentioned, other than a hostile work environment claim, Holliday's Title VII claims may be based only upon those discrete incidents of discrimination that took place on or after March 11, 2003. Accordingly, summary judgment is appropriate against Holliday and in favor of

Defendants regarding Counts I, II and V, regarding all discrete employment practices that necessarily occurred on or before March 10, 2003.

Summary judgment is further appropriate for the same reason as with Holliday's hostile work environment claim: other than her own accusations and assertions, Holliday has failed completely to present any independent evidence sufficient to establish a *prima facie* case of discrimination regarding her pay, work atmosphere, or any other terms and conditions of employment.

*Whether Holliday Has Established a Prima Facie Case of Gender or Race Discrimination Arising from Her March 11, 2003 Termination or from an Alleged Pay Discrepancy*

Defendants further argue that Plaintiff has failed to establish a *prima facie* case of discrimination arising from her termination on March 11, 2003 or for an alleged pay discrepancy. Title VII forbids workplace discrimination with respect to the compensation, terms, conditions, or privileges of employment "because of" an individual's race. ***Hardy v. Univ. of Illinois at Chicago*, 328 F.3d 361, 364 (7th Cir. 2003); 42 U.S.C. § 2000e-2(a)(1).**

A Title VII plaintiff must either (a) provide direct evidence of an employer's discriminatory intent, or (b) show disparate treatment using the indirect, burden-shifting method established in ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir.), *cert. denied*, 534 U.S. 824 (2001).**

To prevail under the indirect approach, the plaintiff first must establish a prima facie case of discrimination, which requires her to prove: (1) the plaintiff was a member of a protected class; (2) the plaintiff was performing her job satisfactorily; (3) the plaintiff suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected class were treated more favorably. ***Salvadori*, 293 F.3d at 996; *O'Regan v. Arbitration Forums*,**

13

*Inc.*, 246 F.3d 975, 983 (7ᵗʰ Cir. 2001).

If the plaintiff satisfies her burden as to this prima facie showing of discrimination, the burden shifts to the defendant/employer to articulate a legitimate, nondiscriminatory reason for its decision. ***McDonnell Douglas*, 411 U.S. at 802.** If the employer does so, that rebuts the presumption of discrimination and shifts back to the plaintiff/employee the burden of showing that the employer's proffered reason was pretextual. ***Id.*; *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692-93 (7ᵗʰ Cir. 2000).** The ultimate burden of proof that the employer discriminated remains on the plaintiff at all times. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 398 (7ᵗʰ Cir. 1997).**

Because Holliday has presented no direct evidence of race discrimination, the Court need only analyze her claims under the indirect, burden-shifting method.

To show race discrimination using the indirect method, Holliday first must meet the elements of her prima facie case. Holliday must satisfy four elements: (1) she belongs to a protected class, (2) she performed her job according to SIUE's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees of a different race (*i.e.*, outside the protected class) were treated more favorably than she. ***See, e.g., Grayson v. O'Neill*, 308 F.3d 808, 817-18 (7ᵗʰ Cir. 2002); *Logan v. Kautex Textron North America*, 259 F.3d 635, 639 (7ᵗʰ Cir. 2001).**

In the present matter, the record shows that Holliday is a racial minority, and as such is considered a member of a protected class; the first element is clearly satisfied. Also without question is the fact that Holliday suffered an adverse employment action, as she was terminated from her employment. Moreover, for purposes of her pay discrepancy claim, Defendants concede that this

14

element may be satisfied when Holliday's pay was set for the final time on June 18, 2002. Nevertheless, Holliday has failed to satisfy elements two and four of her prima facie case for either claim.

In order to satisfy the second element of the prima facie case, the employee alleging discrimination must demonstrate that she was meeting the expectations of the employer either before or up until the adverse employment action. ***Jones v. Union Pacific R. Co.,*** **302 F.3d 735, 741 (7th Cir. 2002).** "Meeting the expectations" of an employer includes adherence to that employer's rules and regulations regarding employee conduct. ***Id.*** Holliday has failed to present any competent evidence to meet this requirement.

To meet the fourth prong of the ***McDonnell Douglas*** test, Holliday must show that similarly situated employees of a different race (*i.e.*, outside her protected class) were treated more favorably than she. ***See Grayson,*** **308 F.3d at 818.** In order to establish that another employee is "similarly situated," a plaintiff must demonstrate that there is someone who is directly comparable to her in all material respects. ***Patterson v. Avery Dennison Corp.,*** **281 F.3d 676, 680 (7th Cir. 2002); *Greer v. Board of Educ.,*** **267 F.3d 723, 726 (7th Cir. 2001); *Radue v. Kimberly-Clark Corp.,*** **219 F.3d 612, 618 (7th Cir. 2000).** In this inquiry, a "court must look at all relevant factors, the number of which depends on the context of the case." ***Grayson,*** **308 F.3d at 819, citing *Radue,*** **219 F.3d at 617.** As with the second element, Holliday has failed to present any evidence – or even any argument or theory – to satisfy this requirement.

For these reasons, summary judgment is appropriate against Holliday and in favor of all Defendants' on her Title VII claims for discriminatory discharge and pay discrepancy.

15

*Whether Holliday has Established a Prima Facie Case for Retaliation Under Title VII*

Holliday separately contends that SIUE unlawfully retaliated against her in violation of **42 U. S.C. § 2000e-3**.  As mentioned, any Title VII retaliation claim may only be premised on those acts of retaliation that allegedly occurred on or after March 11, 2003.  Accordingly, the only adverse action that Plaintiff can timely challenge as retaliatory relates to her termination.

In order to establish a prima facie retaliation case, Plaintiff must establish the following elements: (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action subsequent to her participation; and (3) there exists a causal connection between the adverse employment action and her participation in protected activity. ***Oest v. Illinois Department of Corrections,* 240 F.3d 605, 6 15-16 (7th Cir. 2001)**.

In this matter, Holliday's termination satisfies the second element of her *prima facie* case.  However, as with her other claims, Holliday has failed completely to present any competent evidence to satisfy the first and third elements of her *prima facie* case.  Accordingly, summary judgment is appropriate in favor of all Defendants and against Holliday on these claims as well.

*Whether Holliday has Established a Prima Facie Case for Violation of the Equal Pay Act Arising from Her 2002-2003 Fiscal Year Salary*

Defendants next assert that Holliday has failed to establish a *prima facie* violation of the Equal Pay Act, **29 U.S.C. § 206(d)**, as asserted in Count IV.  In order to establish a prima facie case of wage discrimination under the EPA, Holliday is required to establish the following elements: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions. ***Cullen v. Indiana University Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003)**.

16

Holliday has not presented any evidence that would satisfy even one of these three elements. Accordingly, summary judgment is appropriate in favor of Defendants and against Holliday on Holliday's EPA claim in Count VI.

> *Whether Holliday has Satisfied Her Prima Facie Requirements for the Claims Asserted in Counts VI, VII and VIII Against Each of the Individual Defendants*

As mentioned, Counts VI through VIII are brought against the six individual defendants in this matter. Specifically, Count VI alleges that the six individuals engaged in conduct motivated by Holliday's race (African-American), in violation of **42 U.S.C. § 1981**. Count VII asserts that Holliday is entitled to relief, because the conduct of the six individuals was motivated by her gender and "constituted a violation of the Equal Protection Clause of the Fourteenth Amendment ..." (Doc. 5, ¶ 69). Count VIII is nearly identical to Count VII, asserting a violation of Holliday's equal protection rights but asserting more specifically a violation of her "right to be free from gender discrimination" (Doc. 5, ¶ 78).

It is well established that "the same standards for proving intentional discrimination apply to Title VII claims and § 1983 equal protection" claims. ***Williams v. Seniff*, 342 F.3d 774, 778 n. 13 (7th Cir. 2002); *Helland v. South Bend Cmty. Sch. Corp.,* 93 F.3d 327, 329 (7th Cir. 1996).** As has already been discussed at length, Holliday has failed completely to establish a *prima facie* case that either her gender or race was a motivating factor for *any* decision made or action taken by SIUE or its agents. Accordingly, for the same reasons, it cannot be said that Holliday has established a prima facie case for discrimination against any of the individual defendants in this matter. Summary judgment is therefore appropriate against Holliday and in favor all individual Defendants on those claims in Counts VI, VII, and VIII.

**E. Conclusion**

        For the aforementioned reasons, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56,** the Court **GRANTS** Defendants' motion for summary judgment (Doc. 99) *in its entirety.* The Clerk of the Court is **ORDERED** to enter judgment against Holliday and in favor of Defendants on all remaining claims: (1) Holliday's Title VII Claims against SIUE in Counts I, II, and V; (2) Holliday's Equal Pay Act Claims against SIUE alleged in Counts IV and V; and (3) Holliday's claims in Counts VI, VII and VIII against the individual defendants. All pending motions are **DENIED AS MOOT** and all settings herein are cancelled. This case is now closed.

        **IT IS SO ORDERED.**

        **DATED this 11th day of June, 2007.**

                                   **s/ Michael J. Reagan**
                                   **MICHAEL J. REAGAN**
                                   **United States District Judge**